Good morning, Your Honor. Thank you. Kevin Lafke, may it please the Court. Kevin Lafke, on behalf of plaintiff-appellant Chris Phillips, I'd like to reserve two minutes for rebuttal, please. As you know, Ms. Phillips obtained a jury verdict in her favor, and it is that verdict that we seek to uphold in this Court today. There are essentially three issues for you on that verdict. One is whether the determination of a property interest is a question of fact or law. Of course, the Court submitted the issue to the jury. The jury found that there was a property interest in favor of Ms. Phillips pursuant to jury instructions that you have in your packet. Then the trial court determined otherwise and took the verdict away on judgment as a matter of law. Then, of course, the issue is, regardless of who the determinative entity is on the property interest, is whether there is a defensible property interest, one in which Ms. Phillips had a legitimate entitlement and expectation of a property interest. And regardless of who decides that issue, court or jury, it's clear that Ms. Phillips had a legitimate expectation of a property interest in this case. And that happened when? I'm sorry, Judge? And that happened when? When did she get such a legitimate protected property interest? Repeatedly through this process, not just once, but repeatedly. First, when there was a collective bargaining agreement between Ms. Phillips' union and the Sheriff's office. Second? Which the county entered into, correct? Correct. Which the county entered into and which the union entered into on behalf of its represented employees, including Ms. Phillips. Second? I think that probably is the time when she got something, right? Since they entered into the agreement? I think that's right. And additionally, when the parties agreed to enter into binding arbitration. By the way, didn't once entering into the agreement, wasn't there a CBA in effect? And at that point, they had to abide by the terms and conditions of the CBA? Absolutely. And the CBA Article 34 states that the results of any arbitration shall, not may, but shall be binding upon the parties. The parties did then, in fact, agree to enter into a grievance process, went to arbitration, as Ms. Phillips testified at trial. It was mentioned by the arbitrator at the beginning of the trial that this arbitration would be binding. As Ms. Phillips testified at trial, she expected that she would win or lose, and there wouldn't be any further review based on the outcome of that arbitration. And in fact, Marion County, as you know, had always followed the results of any arbitration grievance process that they'd entered into in the past. This is the first time that any county employee who testified in this case could remember that Marion County had ever refused to follow a binding arbitration award. Is it true that Oregon law permits a government entity to disregard an arbitration award if the award violates public policy? Judge, I think that's one of the biggest mistakes, I'll call it, in the defendant's briefing here. Now, there is a statute, of course, as has been cited, that's ORS 243-706, that talks about that award itself could be challenged if it violates public policy. It lists a few examples like criminal misconduct. Those examples just aren't pertinent here. But the point of this is, is that something where an entity, an employer, could always just appeal and say, well, it violates public policy? The case law for several years prior to Sheriff Isham's decision in this case says no. In fact, the Deschutes County case and the Washington County case is Deschutes County case, year 2000, Oregon Court of Appeals. That public policy is essentially a long shot, a Hail Mary, and it talks about the sanctity of arbitration awards, the finality of arbitration awards. The Washington County case in the Oregon Supreme Court in the year 2003. Again, an employee who was terminated, grieved it, arbitrator ruled in the employee's favor, employer refused to reinstate that employee, a Washington County deputy, and the Oregon Supreme Court said no. That's not the way to do it. Well, is there any statute or judicial decision that suggests that this award is against public policy in your mind? There's not, Judge. There's not. This wasn't just the equivalent of a Hail Mary pass here when Sheriff Isham said, I'm not going to reinstate Ms. Phillips. It completely contradicted then existing law as set forth by Deschutes County and the Washington County cases in the Oregon Appellate Court and Supreme Court. And what defendants rely upon here and what they cite to you in their briefs is the Erb decision in Ms. Phillips' case where Erb said, well, we haven't talked about this before. Our prior ruling in Deschutes County was this about public policy, and that's not good law anymore. Well, of course it's not good law anymore because the Court of Appeals reversed that very same case. Erb is a lower administrative tribunal subject to the Oregon Court of Appeals, subject to the Oregon Supreme Court. And what Erb had said in the lower Deschutes County opinion, the Erb opinion, had clearly been superseded by the Oregon Court of Appeals reversing the Erb in that very same case, Deschutes County, in the year 2000. And if there was any doubt at that point in 2003, the Oregon Supreme Court weighs in in the Washington County case and says you just can't do this. It talks about repeatedly the finality of arbitration awards, the importance of the grievance process, and that's why Ms. Phillips had a legitimate expectation that this policy, this process would be upheld. Let me ask you another question, which is a little bit off the mark. Does it make any difference to you whether this is a judge-made decision or a jury-made decision? I mean, it's a little uneasy to me that you give to the jury the decision as to whether there's a protected property interest. I understand that there's some conflicting case law on this. Certainly this circuit in Brady v. Gebby, another case that came out of Oregon, this circuit said, and you don't get very many appeals of jury verdicts in these kinds of cases. Usually you see it in the context of 12b-6 or some re-judgment. Well, but I'm a little worried that the judge, I mean, my worry about this is how does a jury determine whether there's a protected property interest? They might determine disputed facts, but as I understand it, you suggest there are no disputed facts. Well, none that I think should cause you to question either the jury's verdict or whether there is a protected property interest here. Of course, we say that the jury ought to decide this. If you look at the jury instructions, they're in your packet. Well, I looked at the jury instructions. I'm still having a tough time understanding. Maybe the court got it wrong to say a motion on the motion that he did, but I'm having trouble finding why the jury should have made the decision in the first place. I would encourage this court, and I don't want to get bogged down. I mean, my precedent, under my precedent, I'm having a tough time. And I understand that. I can only say on that issue, and I don't want to get bogged down on it because I think whoever— Well, I don't want to get you bogged down. Whoever the fact finder is, Judge, because of what I've just said, and I hadn't finished answering your first question. I will in a minute, but on this issue of who the proper gatekeeper is, whether it's a jury or the trial court, of course, the Tenth Circuit in the Kingsford v. Salt Lake City School District case has said that it's a question of fact for the jury. This court in Brady v. Gebbe said these issues were properly submitted to the jury. Well, but at that point, in that case, we were talking about disputed issues of fact. Disputed issues of fact. That's true. When you've got disputed issues of fact, of course, you've got to figure out what the facts are. But the application of the law as to whether something's a protected property interest doesn't seem to me to be something that a normal juror can decide. Well, we know that regardless of who the gatekeeper is, the jury has fixed the amount of compensatory damages that are appropriate for the deprivation of that property interest. And I'll go back and answer your question earlier about when that property interest accrued. Of course, not just, as I've already argued, about the arbitration process and the sanctity of that process under Oregon law. But as you know, in this case, and as was argued to the jury in closing argument, the sheriff's office brought Ms. Phillips back to work. They rehired her. They told her to quit her job and come back to work. And then when she did so, after a period of approximately two weeks, then Sheriff Isham said, well, in his own testimony, we put the cart before the horse a little bit. And so we're not going to honor those promises. And the argument here is two things. One, they say that Ms. Phillips still had to be sworn in. Well, no county representative says that. Ms. Phillips says she expected to be sworn in before she physically returned to work. That had nothing to do with her being back on the payroll. She had been reinstated as of the date of the arbitration. The defendant argues that the county employees, Commander Holland, an undersheriff, workers in the county. I'm not sure where this really gets you, because the jury's award wasn't based on a breach of contract that she'd been rehired and then dismissed. It's based on, as I understand it, the failure to honor the arbitration award, the delayed reinstatement. So you're trying to create a new obligation separate from the arbitration award, and I don't know that that can support the jury verdict. The jury wasn't asked to make a finding on which facts it based its decision on. It could have made this finding based on the fact of the arbitration award and then given the explicit mutual understandings about binding arbitration. I'm looking at the jury verdict form. It says delayed reinstatement. That sure doesn't sound like she was hired again and then terminated. At the time of the jury trial, Judge, Ms. Phillips had at that point been reinstated. So the delayed reinstatement was throughout this time period. It could have been as a result of the failure to follow the arbitration award. It could have been as to the bringing Ms. Phillips in and then pulling the rug out from under her and saying, well, never mind, even though Under Sheriff Wilkerson said he had the authority and he was acting on behalf of the sheriff in his trial testimony and bringing Ms. Phillips back to work, and then just saying, well, never mind, we're not going to do that. But again, alternatively, just like whether it's a judge question or a jury question about a protected property interest, clearly there is a protected property interest here in this binding arbitration award. Clearly the county failed to follow that in contravention of existing case law, existing statutes that talk about the sanctity of arbitration awards, and this particular matter in which each agreed to engage in binding arbitration, and the county acted in a manner they had never done in the past. Similarly on the jury's verdict, whether the jury made the decision based on that binding arbitration award or whether it made its decision based on inviting Ms. Phillips back to work and then unfairly and inequitably canceling that decision to Ms. Phillips' detriment, one that she relied upon, regardless of the factual basis, it's a supportable verdict under the facts and the law that were presented to that jury. Thank you. I'd like to reserve the rest of my time for review. Thank you, Mr. Lefky. Good morning, Your Honors. May it please the Court. Todd Lyon from the law firm of Baron Liebman on behalf of Marion County et al. Good morning. I'd like to begin today talking about who gets to decide this issue. Certainly that was the preliminary issue that was raised in the briefing. I think it's fairly clear in the Ninth Circuit that the Court decides the issue of whether there's a due process deprivation. And if the Court decides that issue, then it is a question of law? Yes, sir. And if it's a question of law, then having been appealed, is it a question of law then that I must decide? It is de novo review, Your Honor. That's what I understand to be the reviewing process here. Okay. Okay? That's what I wanted to make sure you were saying. Okay. Yep. And to gild the lily just a little bit, in Walker v. Berkeley here, the Court, the Ninth Circuit Court of Appeals, went to the extent to outline how important it is for the Court to make these decisions. According to that Court in 1991, the Court should not have asked the jury to decide the legal question of adequacy of the post-termination proceedings. Juries do not decide whether or not a procedure satisfies due process. And so ultimately here, Judge Mossman did the correct thing by taking that issue back and making the decision himself. As to whether or not he got the decision correct, we submit to Your Honors that this is a novel question in plaintiff's attempt to create a new due process property interest. Instead, if you reexamine what this really is, this is nothing more than grievance procedures. And the Ninth Circuit has indicated fairly clearly that procedures, and in particular grievance procedures, do not establish property rights. And so, for example, I think I fell off the vote. I'm not sure I understand the distinction you're drawing. Sure. We have in this case what appears to me to be a binding arbitration award that she's entitled to reinstatement. So her claim isn't to a procedure. It's to the award, the reinstatement part. How is that not a property interest? Your Honor, because that the plaintiff has, through her union, contractual rights to enforce that award. That doesn't create an established property right. Well, if I have a judgment for a half-million dollars from somebody, okay, I've got the right to enforce it, but I also have the judgment. That's worth a half-million dollars, isn't it? Why isn't that a property right? Because, Your Honor, you've got the established procedures to enforce the judgment. You've got a statutory procedure to enforce that. Similarly, plaintiff has the established contractual procedures to enforce the arbitration award. And, in fact, the union did pursue that. The union filed an unfair labor practice charge against the employer, and ultimately ERB, the Employment Relations Board, decided that the employer's failure to comply constituted an unfair labor practice and ordered Marion County to comply with that arbitration award. And so it's got a separate procedure for that tract.   constituted an unfair labor practice and ordered Marion County to comply with that arbitration award. Next issue is whether the county gets qualified immunity. Okay. As I understand it, they say all of this happened in 2008, but as early as 2000 in the Deschutes case, and in 2003, five years before in the Washington County police case, we have two appellate decisions today. The sheriff can't do what he did. Well, we need to go back in and look at the history of the statute. 243-706 was subjected to substantial changes in 1995 with Senate Bill 705. And the changes there that were made expressly identified the types of public policy violations that we as a State institution here wanted to prevent arbitrators in reinstating employees on, including among those expressly listed kinds of misconduct for which, if an arbitrator reinstated an employee for those kinds of misconduct, that would violate public policy. And included in those types of misconduct was the egregious and excessive use of physical force. That's the basis upon which Marion County, and in particular Defendant Isham, relied upon in deciding not to comply with that arbitration award. And if you look closely at the Deschutes court of appeals decision, are you suggesting that there is a statute, and I guess I'm trying to figure out what statute you're suggesting to me now because I look for a statute, or a judicial decision that clearly defines that this arbitrator's award was contrary to public policy? Yes, Your Honor. What statute is that? That is Oregon Statute 243.706, subparagraph 1. That's the one you're relying on? Yes, sir. And so, for example, it indicates in the subsection 1. Well, all that says is, is a condition of the arbitration order to reinstatement shall comply with public requirements as clearly defined in the statutes or judicial decisions. That's all that says. But it goes on, Your Honor. It says, including but not limited to policies respecting sexual harassment or sexual misconduct, unjustified and egregious use of physical or deadly force, and serious criminal misconduct related to work. It gives the examples in the statute of what would constitute the misconduct for which it was a case of excessive force, wasn't it? Exactly, Your Honor. And they ordered him reinstated? Yes, they did. But that was on other grounds. And so you need to pay very close attention to that decision, because what happened in that case was the arbitrator rendered findings of fact. The findings of fact included matters upon which the discipline did not rely. And so when the employer in that case challenged or refused to comply with the arbitration award, ERB captured those findings of fact that did not have a basis for the ultimate decision to discipline. And so they relied upon those other findings of fact, dicta, if you will, and it decided that based upon those findings of fact, it was going to declare that the award was unenforceable pursuant to public policy. The court of appeals in that case decided that even though ERB dealt with this other issue, they are going to decide generally what the law is on this other aspect. But they left alone, they left alone the notion in Deschutes County whether this type of misconduct then violates public policy. Well, I've got a case from the Oregon Supreme Court called Washington County Police Association. Are you familiar with that case? Yes, sir. Why doesn't that speak to this? That appears to say pretty clearly the public policy loophole applies only to the arbitration itself, not to the underlying complaint about the officer. Well, and let me make sure, before I answer that, let me make sure that we're all talking in the same language. We're talking about whether binding arbitration is part of a grievance arbitration procedure, because that's the ultimate culmination in a grievance arbitration procedure, establishes a property right. Well, the ultimate is the award that's the ultimate result of the arbitration  Well, but again, the award doesn't create a property right. You've got the lawsuit and you've got the judgment. It's the judgment that matters. The lawsuit's the device to get there. You've got arbitration, you've got an award. The arbitration's the root. The award's what counts. Correct. And again, Your Honor, the union has the vehicle to enforce that award, just as if you have a judgment. Well, the fact that there's another vehicle to enforce doesn't mean there's not a property interest. I mean, 1983 comes into this in a funny fashion. But the fact that you may have a State law cause of action doesn't mean you don't have a 1983 action. So the so telling me that the union could enforce really doesn't tell me very much. But it begets the question of whether there is a property interest. And based upon Mustafa and Miller v. Deschutes Valley District, we know that grievance procedures, such as this one, do not establish a property interest. And so, you know, anyway, getting back to the binding arbitration procedures, binding arbitration is generally binding on the parties. That's what it means, what it says. But there are recognized exceptions. Why doesn't the Washington County decision say that that recognized exception isn't recognized anymore or is limited to a circumstance that doesn't apply here? And it is. What was unclear in the law after the Washington County decision? What was unclear was whether when you have instances of this type of physical force where the arbitrator actually concludes that the employee engaged in that type of misconduct, whether that arbitration award is enforceable against public policy of not harming inmates in this case. But my worry is that you're, again, interpreting 243.7061 a little differently than I understand it by the words thereof. It says, shall comply with public policy requirements as clearly defined in statutes or judicial decisions. Then it says, including any public policy that has to do with what you're now talking about. So we're not talking about a separate requirement here. We're talking about statutes or judicial decisions, including public policy relating to these types of conduct. Correct, Your Honor. So I'm looking for a statute or a judicial decision that even includes this stuff that suggests that you can get out. Well, I can't find it. I mean, I look at Washington, which my colleague has already cited to you. And frankly, that seems to reinforce my reading of 7061. When they say, in other words, does an award ordering reinstatement of an employee, and this time who has purchased and used marijuana and then been dishonest about it, fail to comply with some public policy requirement, then these are the magic words, clearly defined in a statute or a judicial decision. And I can't find anything that suggests that it's been clearly defined. So I say to myself, if the county wants to enter into this agreement, then they better appeal the award, not just say I won't comply. Their first decision was, I won't enter into this agreement. Then I don't have to bind myself at all. But once having agreed, then I don't know why they're not bound by the agreement they enter into. In labor relations, binding arbitration means that it's binding so long as, one, the arbitrator doesn't exceed his authority. I understand that. Two, the arbitrator doesn't impose his own brand of industrial due process. And, three, it doesn't violate public policy. Those we get from the Steelworker Trilogy cases, and Oregon public sector labor law has adopted those principles here. But that all applies in my situation. That's correct, Your Honor. And the experts on this were the Employment Relations Board. And so when at the Employment Relations Board, the county argued that there's a public policy protecting inmates from being handcuffed to two sets of beds and then being photographed with his pants down around his ankles, Erb said, yeah, that's right. But they said that in this order, we held for the first time that our conclusions in Deschutes County dealing, again, with this physical abuse regarding reinstatement of correction officers are no longer good law. Accordingly, the county's refusal to implement the Arbitrator's Award and reinstate plaintiff was not taken with knowledge that it was an unfair labor practice. So even Erb, the people who deal with the enforcement of arbitration awards in the public sector anyway, they said, well, look, it was reasonable for you to rely upon Deschutes County. And what year was that? Pardon? Yeah. What you just wrote. That was the Erb decision in Marion County. Which year was that? Which year was what? That was March 29, 2010. That was in this case, Your Honor. Let me ask. Suppose we disagree with you on the whole shebang. Okay. Would our obligation then be to reverse the district court and tell it to reinstate the verdict? Is that what would happen as you see it? No, Your Honor. I don't believe that would be the consequence here, because ultimately, the question is whether there was a deprivation of due process in the delay, as we know that she was reinstated to her position. So I'm not sure that there would be any additional remedy required other than the reversal of the judicial decision. Well, she got a jury verdict. The judge set it aside as a matter of law. If we hold that setting it aside was error, then why wouldn't the verdict be reinstated? Well, I — In a related question, why wouldn't we then also let him make his application for attorney's fees? Yeah. Well, certainly on the attorney's fees issue, the question is whether at this point winning one out of four causes makes them a prevailing — Well, that's for the district judge to decide, but it would seem to me, if we agree with you, that's the end of the ballgame. If we agree with him, it would seem to me that what we should do is remand the case with directions to, you know, reverse the order setting aside the verdict, which would then reinstate the verdict, and then you're off and running on whether he's entitled to fees or not, you know. Does that sound right? Well, we certainly hope that that's not the case, Your Honor. Yeah, I know. I guess my — They hope it is the case, so — My ultimate question is, and it's somewhat related to my colleagues, supposing I do believe this is a question of law, which the district court shouldn't have — shouldn't have given to the jury, but then I find that there was a protected property interest. In other words, I wouldn't do what the district court did. And in no vote review, I would find there is a protected property interest. I would still reverse the district court, would I not, and in — and in fact, put the jury's verdict back in place. Well, again, Your Honor, there were two independent bases here that the — that the court determined negated that jury verdict. And one was, of course, as we've talked about, whether there was a property interest, and the other was whether there was qualified immunity. And so I would submit to Your Honors that on either of those causes that you wouldn't reach that result. Okay. Thank you, Mr. Lange. Thank you. Mr. Ulafsky, you get the last word. I think you had a couple of minutes and change. Thank you, Your Honor. The court is obviously familiar with Deschutes County and Washington County, and the language in those cases is very clear. It's true, as counsel stated, that when Erb took up this case again, Erb said, we, for the first time, revisit Deschutes County. Well, that had been overruled by the Oregon Court of Appeals. That had been changed by the Oregon Supreme Court. So at least as of 2003, the guidance in this matter was clear. Ms. Phillips was terminated in September 2008. So at least for five years, the legal guidance in Oregon had been clear. There was no statute, no case law to support Sheriff Isham's unilateral, unprecedented decision to disobey the arbitration award and not bring Ms. Phillips back to work. And of course, they could have reinstated her and then submitted their appeal to Erb. That's why there is a property interest. That's why it's vindicated under Section 1983, because they did not do that. Even though their own executive team, everyone except Sheriff Isham, recommended that that be done. The proper remedy here would be to reinstate the jury verdict and remand for determination of costs and attorney fees. We had already submitted a cost bill and fee petition in the lower court before the briefing. That was due before the briefing and the decision to set aside the jury verdict as a matter of law. So would there be any reason in your 32 seconds you have left for us to even address the abuse of discretion in excluding the resignation? No, we've only appealed that issue in the alternative if this court believes that the jury verdict should not be reinstated and affirms, at least potentially, the trial court's decision on qualified immunity or on the protected property interest. Our primary choice is to have the verdict reinstated. And if that's not the case, then we'd like the court to examine that issue. Thank you, Mr. Lyon. Mr. Lyon, thank you, too. The case just argued is submitted. Good morning, gentlemen. Last case today for argument is 11-73172, George Swersie versus the OWCP.
judges: Silverman, Clifton, Smith